216 So.2d 436 (1968)
M.B. BERGH, Petitioner,
v.
CANADIAN UNIVERSAL INSURANCE COMPANY, a Corporation, Respondent.
No. 36510.
Supreme Court of Florida.
November 20, 1968.
Rehearing Denied January 6, 1969.
*437 Reinstine, Reinstine & Panken, Jacksonville, for petitioner.
Howell, Kirby, Montgomery, Sands & D'Aiuto, Jacksonville, for respondent.
ERVIN, Justice.
We have for review Petitioner's claim of conflict jurisdiction in the decision of the District Court of Appeal, First District, in the case of Bergh v. Canadian Universal Insurance Co. (1967), 199 So.2d 744. See also the earlier decision of the District Court in the case reported in 197 So.2d 847. The Respondent, the insurance company, was plaintiff and Petitioner Bergh, defendant in a declaratory judgment action brought in the Circuit Court. It appears from the opinions of the District Court in said decisions that Respondent issued a policy of professional liability insurance to Petitioner, Dr. M.B. Bergh. The policy provided that Respondent would, subject to specific provisions, exclusions and conditions, pay on behalf of Dr. Bergh all sums which he should become legally obligated to pay as damages arising out of the performance of professional services in his capacity as physician. Under the section titled "Conditions" the policy provides:
"* * * Upon the insured becoming aware of any alleged injury covered hereby, written notice shall be given by or on behalf of the insured to the Company or any of its authorized agents as soon as practicable, together with the fullest information available. * * *"
It appears that in January, 1964 Petitioner performed a surgical operation upon one Lillie L. Thomas and provided follow-up care and further surgery upon her in June, 1964 with additional follow-up care at Petitioner's *438 hospital until her discharge from that hospital in July, 1964, whereupon she came under the care of other physicians.
Shortly after the operation upon, and treatment of said patient, Petitioner received a telephone call from the patient's attorney concerning a possible medical negligence claim against him. This call was followed by a letter dated October 26, 1964, informing Petitioner that the patient had retained services of this attorney and inviting Petitioner to contact his attorney at his earliest convenience. It appears that Petitioner did nothing with that letter other than filing it and did not notify his insurance company. Subsequently, on or about February 20, 1965 the patient instituted an action at law in the Circuit Court in and for Clay County, Florida against Dr. M.B. Bergh, alleging acts of negligence growing out of the surgical procedures and medical attention, or lack thereof, in connection with the physician-patient relationship. Upon receipt of the summons and complaint by Dr. Bergh, still no notice was given to the insurer and the suit papers were not forwarded to the insurer but were delivered to Dr. Bergh's personal attorney. However, on March 31, 1965 orally, and on April 1, 1965 in writing, notice of the claim and the patient's alleged injury was given for the first time to the insurer.
It further appears:
A. On April 12, 1965 the Respondent procured from Petitioner a nonwaiver agreement permitting the Company to:
"* * * proceed to investigate the said accident, or undertake the defense of any suit growing out of the said accident, without prejudice to the rights of the said company, and that no action heretofore or hereafter taken by the company shall be construed as a waiver of the right of the company, if in fact it has such a right, to deny liability and withdraw from the case."
B. Thereafter, the Respondent took control of the suit that the patient had filed against its insured. Respondent, through its attorneys, had control of the suit from about April 12, 1965 until the filing of its motion to withdraw as counsel for Petitioner on December 10, 1965  a period of some eight months. During this period Respondent filed pleadings, argued motions, propounded interrogatories and participated in or took depositions.
C. On December 10, 1965 Respondent's attorneys filed motion to withdraw as counsel for Petitioner, asserting as a basis therefor Petitioner's failure to give notice as soon as practicable as required by the liability policy. Also asserted was the nonwaiver agreement entered into on April 12, 1965.
D. On December 21, 1965 Respondent filed a complaint for a declaratory decree in the instant action. In the complaint Respondent alleged:
"* * * Bergh failed, omitted and neglected to furnish such notice as soon as practicable or to immediately forward said suit papers which were served upon him * * * he gave no notice whatsoever to the Plaintiff insurer or any of its duly authorized agents until on or about March 31, 1965, long after the alleged negligent or wrongful acts were committed * * *
"* * * Thereafter, on or about April 16, 1965, the * * * attorneys for the Plaintiff entered an appearance on behalf of Dr. Bergh in the Clay County action and proceeded to accord said Defendant Dr. Bergh a defense pursuant to a non-waiver agreement or reservation of rights wherein said Defendant Bergh permitted Canadian Universal Insurance Company to undertake the defense without prejudice to its rights to deny liability and withdraw from said law action * * *

"Plaintiff contends that the Defendant * * * breached the notice provisions of *439 his insurance policy and therefore is not entitled to coverage or protection under and by virtue of said policy, by failing to comply with the provisions pertaining thereto." (Emphasis added.)
Petitioner closed the complaint by praying that the court would
"Enter a declaratory judgment construing and declaring all of the respective rights, legal relations, immunities, obligations, or lack thereof, existing between the Plaintiff and the Defendant arising out of and under the policy of insurance above mentioned and by virtue of the matters and things hereinabove alleged * * *" (Emphasis added.)
E. The District Court, in its earlier opinion, states:
"The Court below found that notice of the alleged injury covered by the insurance policy was not given by or on behalf of the appellant to the company or any of its agents as soon as practicable after he became aware of the alleged injury. Such notice was required by the policy and failure to give it in the circumstances here obtaining constituted a material breach of the policy provisions so as to relieve the appellee of coverage and liability to the insured appellant." (197 So.2d 847, text 849)
F. Petitioner appealed to the District Court of Appeal, First District, which court affirmed the trial judge's decree. Petition for rehearing was denied. See 197 So.2d 847.
G. Petitioner then filed an extraordinary petition to recall the mandate and reverse the court's decision for lack of jurisdiction. As grounds for and in support of this petition Petitioner contended that the Respondent in its declaratory judgment complaint presented to the circuit court immaterial factual questions for determination as to the issue of its liability, and did not seek a construction of the policy and the nonwaiver agreement. Petitioner contended that Chapter 87, Florida Statutes, F.S.A., the Declaratory Judgment Act, cannot be availed for the sole purpose of determining the sufficiency and timeliness of a notice of claim under a policy of insurance where there is no real issue involving the construction of a policy provision. The District Court denied Petitioner's extraordinary petition to recall mandate (199 So.2d 744). It stated that the situation was not one where the only question to be determined was a question of fact, but involved a construction and interpretation of the policy and the nonwaiver agreement. Specifically, the District Court said:
"[t]he finding of fact that the insured had not given notice of claim to his carrier as soon as practicable was only incidental or ancillary to the determination of rights of the parties under a nonwaiver agreement which had been entered into by them." (At 745.)
H. Petitioner has petitioned us for writ of certiorari for review of this holding and contends that we may properly invoke conflict jurisdiction pursuant to Article V, Section 4(2), Florida Constitution, F.S.A., and Rule 4.5(c), Florida Appellate Rules, 32 F.S.A., and cites for conflict the cases immediately hereinafter discussed.
In the case of Columbia Casualty Co. v. Zimmerman, Fla., 62 So.2d 338, we held that a declaratory judgment action would not lie where there is no doubt or question as to the meaning of the contract involved. Zimmerman concerned an automobile liability insurance policy and the doubt shown to exist was factual, viz., whether or not the automobile involved was being driven with or without the knowledge and consent of the insured. We said that such doubt
"* * * is not a doubt as to the meaning of the contract or as to the proper interpretation of the contract. It is simply a doubt as to what will be the ultimate outcome of a consideration of the facts bearing on the question of whether or not the automobile was being driven with the knowledge and consent of the insured.

*440 "The declaratory judgment statute cannot and should not be extended to cover any such situation." (At 340.)
Likewise, in a somewhat similar situation in which the propriety of declaratory judgment was considered, the District Court of Appeal, Third District, in the case of Johnson v. Atlantic National Insurance Company, 155 So.2d 886, held that an insurer's complaint containing allegations of nonliability on the basis of the insured's breach of duty to give it written notice of an accident was insufficient to state a cause of action for declaratory relief. That court also noted that there must be a doubt or need for construction of the policy or for a determination as to validity.
The question of applicability of declaratory judgment relief was also involved in the case of State Farm Mutual Automobile Ins. Co. v. Couch, Fla.App., 167 So.2d 786. In that case the District Court of Appeal, Third District, held that inasmuch as defendant insurer's liability depended upon factual questions, viz., whether a driver who had paid the insured $50 and was allowed to drive the insured's car from Tennessee to Florida and back during a school holiday was operating it merely as a borrower or as a lessee within a policy provision excluding an automobile from coverage while leased to another, the suit for declaratory decree would not lie.
Our study of the above-mentioned cases reveals that the basic issue involved in those cases is analogous to the one posed by the instant situation, to wit: a determination in a declaratory judgment proceeding as to whether the insurer is liable to the insured in view of alleged breaches of policy provisions  said determinations involving, in each case, factual questions and issues and not contract interpretations or construction. Therefore, it appears to us the Petitioner's claim of conflict is meritorious and fundamental and we should accept jurisdiction in this cause. See Smith v. Milwaukee Insurance Co. (DCA4th), 197 So.2d 548.
The only doubt involved in the instant declaratory judgment proceedings entailed determination of certain factual issues appearing in the case, to wit: Did Petitioner's delay in giving Respondent notice of the claim against him amount to a material breach of the insurance policy? Did waiver or estoppel preclude Respondent's disclaimer of coverage and liability by virtue of delayed notice and the non-waiver agreement? We believe that the District Court erred in its conclusive finding as a matter of law and overstated the same, that
"* * * the lower court * * * construed and interpreted the nonwaiver agreement * * *.
"The findings of fact that insured had not given notice of claim * * * as soon as practicable was only incidental to the determination of rights of the parties under a nonwaiver agreement which had been entered into by them." (199 So.2d at 745; emphasis added.)
From our review of the case we agree with Petitioner that the only questions actually decided by the Circuit Court (and this is reflected in the reported opinions of the District Court, 197 So.2d 847 and 199 So.2d 744) were factual ones, viz.: Whether the Petitioner's delay in giving Respondent notice amounted to a breach of the insurance policy? Whether the nonwaiver agreement was waived by the conduct of the Respondent?
Nowhere does it appear an interpretation of the language of the policy or of the nonwaiver agreement was a part of the decisional disposition of the declaratory judgment proceedings. The correctness of the determination of factual issues was the sole subject decided by the District Court and such was not "only incidental" to a declaratory determination.
With respect to the merits, Petitioner contends that the Respondent had full opportunity to conduct, and did conduct, a thorough and complete investigation of the *441 case and had full knowledge of all the facts and circumstances involved  including the delay of notice  yet kept complete control of the case for approximately eight months. Petitioner claims that by its conduct Respondent waived and is estopped to assert non-compliance with the notice provisions of the policy, and also waived the nonwaiver agreement.
Petitioner does not contend that the nonwaiver agreement is of no consequence in a determination of this cause, nor do we in any sense ignore its significance. The nonwaiver agreement specifically permits the Respondent to investigate any claims or suits growing out of an accident in which the Petitioner is involved and provides that action taken in that respect shall not be construed as a waiver of the right of the company to later deny liability and withdraw from the case. Such agreements are recognized within the boundaries of contract law and, as a general rule, are enforceable as between competent parties entering thereinto. (See 7-A Appleman, Insurance Law and Practice, § 4694, p. 539; 45 C.J.S. Insurance, § 704(a), p. 675; 18 A.L.R.2d 498; 29 Am.Jur. Insurance, §§ 816, et seq.) This proposition must, however, be considered in light of the principle enunciated by us in Queen Insurance Co. v. Patterson Drug Co., 73 Fla. 665, 74 So. 807, L.R.A. 1917D, 1091, that "a nonwaiver agreement may itself be waived * * * by such transactions with the assured as would amount to a waiver of the forfeiture clause of the policy." (at 809.) Thus Florida law while recognizing the validity per se of such agreements does not allow them the unfettered power in all circumstances to supersede doctrines of waiver and estoppel.
The record filed in this Court reveals that Respondent employed the services of insurance adjusters to investigate the potential claims against Petitioner. Respondent's instructions to the adjusters were by way of letter dated April 9, 1965. Deposition of an investigating adjuster states that the nonwaiver agreement was signed by Petitioner on April 15, 1965. At this same date it appears that Petitioner was also asked to sign a statement concerning the late or delayed notice, which he did. This same date, April 15, 1965, marked the termination of investigatory services by the adjusters on behalf of Respondent. It appears that at this time the insurer had all of the information concerning the delayed notice but it did not act thereon for several months to disclaim liability. Instead, it appears the Respondent, during the succeeding eight or ten months, through its attorneys, entered the Thomas suit and caused depositions to be taken or participated in the taking of depositions relating to the subject of the alleged negligence of Petitioner respecting his medical treatment of Lillie L. Thomas. In fact, all of the initial investigation of the Thomas case in the eight months after the insurer was notified  the filing of pleadings in the case and the taking of depositions or questioning witnesses on insured's behalf  was performed by the insurer's attorneys or investigators. Over this extended period insured relied upon the described activities of insurer in the case and did not employ counsel to prepare his defense in the Thomas suit and as a result his interests in the outcome of the suit may have been prejudiced.
We stated in Palatine Insurance Co. v. Whitfield, 73 Fla. 716, 74 So. 869:
"If an insurance company intends to stand on a forfeiture clause of its policy, it should so inform the insured as soon as practicable after it ascertains the facts upon which it bases its claim of forfeiture." (at 872.)
Each case involving the question of waiver of forfeiture provisions is to be decided on the particular facts involved.
We quash the decision of the District Court; this will permit the parties in a proper case to submit the factual issues in a proper trial forum which may require a jury determination concerning whether the Respondent is absolved from liability *442 because of the delayed notice of the Thomas claim or whether the delay of Respondent in disclaiming liability waived the non-waiver agreement executed by Petitioner.
It is so ordered.
ROBERTS, DREW and THORNAL, JJ., concur.
THOMAS, J., dissents.
WHITE, Circuit Judge (Ret.), dissents with Opinion.
CALDWELL, C.J., dissents and agrees with WHITE, Circuit Judge (Ret.).
WHITE, Circuit Judge, Retired (dissenting):
I respectfully dissent and feel that I should state my reason. This will be done as briefly as possible.
Jurisdiction has been accepted here on the ground of conflict in prior decisions and the present decision of the District Court of Appeal. To support that view the following cases are cited: Columbia Casualty Co. v. Zimmerman (Fla. 1952) 62 So.2d 338; Johnson v. Atlantic National Insurance Company (Fla.App. 1963) 155 So.2d 886; State Farm Mutual Automobile Ins. Co. v. Couch (Fla.App. 1964) 167 So.2d 786; and Smith v. Milwaukee Insurance Co. (D.C.A. 4th 1967) 197 So.2d 548.
It is important to note that in each of these cases, except Smith v. Milwaukee Insurance Co., a motion to dismiss was filed and ruled upon in the lower court and the ruling was before the Court on appeal. In each case it was held that the motion should have been granted. I agree.
The case now before the Court is quite different. Defendants did not move to dismiss the bill for declaratory decree but, instead, filed answers, submitting the case for decision on the merits. In his final decree the trial judge said:
"It was agreed at the hearing, however, that the Court could and should decide any material factual, as well as legal, issues upon the record herein and the record in the case of Lillie L. Thomas v. M.B. Bergh, Case number 596 pending in Clay County, Florida, which, at the request of the parties, the Court takes judicial notice; and it was agreed that the Court should decide all of the issues as upon final hearing."
Thus, all parties consented to trial on the merits upon the bill for declaratory decree. Unquestionably, the lower court had jurisdiction of the subject-matter and of the parties. In such a case a court may proceed to decide. If one needs authority for this statement he is referred to the several cases cited in the dissenting opinion in Smith v. Milwaukee Insurance Company, supra.
Adverting now to that case, it is true that no motion to dismiss was filed in the lower court as was done in the other cases cited in the majority opinion. In this respect there is conflict in the decision of the District Court of Appeal in the present case and in the decision of the Fourth District Court in that case. That decision is unsound for the reasons to which reference has been made, viz., the failure to question the procedure by motion to dismiss and the submission of the issues for trial without objection.
To adopt a contrary rule is to give defendants "two bites at the apple." They are permitted to submit the merits for trial in one proceeding and, upon losing, allowed a second trial in a different forum.
To summarize my views, I would hold that, where all necessary parties are before the court making no objection to trying the merits by bill for declaratory judgment, the court has jurisdiction in such a *443 case to render judgment upon the issues thus submitted without objection.
In the present state of the record this court should not decide the merits contrary to the original decision of the District Court of Appeal. (197 So.2d 847).
CALDWELL, C.J., agrees.